The case for argument, case number 20-1162, Eastern Arkansas, Courtney MacKintrush v. Dustin Hodge. Stepper, when you're ready. The issue for the court today is whether the trial court erred in denying qualified immunity to Dustin Hodge. In other words, we would assert that the trial court did err in denying qualified immunity. The court did not present or analyze the case under the appropriate qualified immunity standard. As this court is aware, a government official is entitled to qualified immunity if their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would know. That analysis is two-part. The first part is the determination of the guilt. The second part is the determination of whether that constitutional right was clearly established at the time of the incident such that a reasonable officer would have known that their actions were unreasonable. In the order denying qualified immunity, as I stated, the trial court did not apply the correct standard because the trial court did not analyze the second prong of the qualified immunity. Counsel, what about the Carroll's case which says the law was clearly established two or three weeks before this incident happened as to body slamming? What about the Carroll's case? Does that settle the clearly established? Your Honor, the Carroll's case does not settle whether it was clearly established, and let me tell you why. Mainly, the facts of the Carroll's case are very different from the facts presented to the court today. In the Carroll's case, the woman was essentially going to be placed under arrest, and at the time, she was smoking a cigarette. And the court determined that at the time, no reasonable officer could determine that Ms. Carroll was existing. It's important because of what Ms. Carroll said. At the time, the officer said, stop insisting, and Ms. Carroll said, I'm trying to put out my cigarette. At the same time, another officer was assisting and was helping Ms. Carroll put out her cigarette. In the case that issued before the court today, the issue was someone who was noncompliant. Well, counsel, now, doesn't, aren't you construing the facts favorable yourself? I know you keep saying there's a nudge and there's a this and there's a that. But, boy, I've looked at the video many, many, many, many times, and, you know, I can't quite tell what's really going on there. And, of course, you say it's not a body slam, a slip. They said it's a body slam. Aren't there so many facts here that, you know, in the end, we almost don't even have jurisdiction to decide because there are so many disputed facts. What do you say to that? And, Your Honor, I would disagree with that. And let me go back to the Carroll's case. In the Carroll's case, you have the detainee stating, not resisting, I'm trying to put out a cigarette. In this video, and I'll agree with Your Honor, there's a lot going on, but there's no doubt that you see Mr. McIntosh throw an elbow in the direction of Deputy Hodge. Boy, do you think you can tell where the elbow goes and what angle it goes to and whether it touches anything? I can't see that it touches anything. And I understand that, Your Honor. And for the purposes of this argument, I'll concede the fact that the elbow did not hit Mr. Hodge in his chest. But I think that that doesn't matter, Your Honor, because the video does show that the elbow was thrown in the direction of Deputy Hodge. And, Your Honor, in addition to that, there were multiple instances of noncompliance by Mr. McIntosh. Your Honor, it started with the shower, refusing to put on the uniform of the Pulaski County Jail. And then it continued as they escorted him to a holding cell, a holding cell for him to calm down. And during that walk, and this is undisputed, Mr. McIntosh stopped multiple times, at one point walked backwards, at one point put his back against the wall. And each time, Deputy Hodge used a soft, empty hand to direct him in the right direction. And, unfortunately, in the last incident, the last action that occurred was, again, Mr. McIntosh not wanting to move forward. And he threw an elbow in the direction of Deputy Hodge. Well, counsel, isn't he moving right before you're saying he's throwing an elbow? Isn't that the only fair reading of the video? He is moving, Your Honor. Yeah, for sure. But the question is, Your Honor, as I said before, this is an accumulation of events. This wasn't one moment where he was maybe moving forward or maybe not. It's an accumulation of multiple instances of noncompliance. And, Your Honor, I will assert that the cases that we put before this court, the issue is noncompliance. And those facts are undisputed. Well, not only was he moving, wasn't he moving in the direction that the officers were telling him to move? Counsel, I understand your argument about accumulation, but that seems like an awfully strange time to use force against Mr. McIntosh. Well, Your Honor, I think you have to look at even if someone can view that video and say he was moving in the right direction, at the same time, he throws an elbow back towards Deputy Hodge. And so it's not just a question I don't believe of whether he was moving forward or not. At the same time, an elbow was going back towards Deputy Hodge. And for me, that takes this case to an issue of active resistance. Your Honor, I'll proceed with my argument on the second floor. And I would like to direct the court's attention to the issue of whether a right was clearly established. And the court's been very clear in what you have to present to show that a constitutional violation is clearly established. You have to have controlling authority or robust consensus in the place of the statutory or constitutional question beyond debate. That's from Ashcroft v. Al-Kidd. Counsel, what about the Shelton case? Now, I know Shelton is later. Shelton's not like Carroll's. But Shelton says, I think, stating the law, that even though someone pulls her arm away from the officer, that that's not enough. Does Shelton almost control this case, the black letter in Shelton? Your Honor, it certainly wouldn't control, I don't believe, for a decision on whether the right was clearly established. Yeah, but it's characterizing Carroll's counsel. I mean, just so you know, it's characterizing Carroll's, which is three weeks or some such time. I need to look at the time frame. Yeah, about three weeks, about right. Three weeks before this happens. Go ahead. And, Your Honor, I would say first, well, with respect to that and the issue of someone pulling their arm away and that's not enough, Your Honor, I would say that that case needs to be read in conjunction with the Blazek case. And, Your Honor, the Blazek case, which was decided before this incident occurred, involved an individual who was intoxicated, refused to give his name, and simply wouldn't sit down when they told him to stay seated. And in that case, Your Honor, they took the individual down and this court determined that at that time it was not clearly established that such a takedown would violate someone's constitutional rights. And, Your Honors, I would also point out there are similarities between Blazek and this case. One, in Blazek, the individual was intoxicated. Mr. McIntosh, in this case, has admitted that prior to being brought to Pulaski County, he had been drinking. Also, the individual in Blazek refused to follow certain orders and the orders were to stay seated. Again, in this case, Mr. McIntosh was refusing to follow orders. And in addition to that, there are facts in this case that were not presented in Blazek that I think further support that the action taken by Deputy Hodge was reasonable. Let me point those out to the court. The first is that unlike Blazek, Mr. McIntosh was arrested for a crime, criminal mischief. The second is that unlike in Blazek, Appellant Hodge had a reason to believe that Appellant McIntosh posed a danger. Appellant Hodge was told by the arresting officers to be careful with Mr. McIntosh. And we know why the officers stated that, because Mr. McIntosh, prior at the halfway house, had destroyed property at the halfway house, thus committing criminal mischief. Furthermore, in contrast to the detainee at Blazek, Appellant McIntosh's resistance was more than passive. As I stated earlier, he used his elbow in the direction of Mr. Hodge. And finally, Your Honors, and I think this is an important point. In Blazek, they were not in a jail facility. And in this case, they were in a jail facility in front of six unrestrained inmates. Well, Counsel, I know you emphasized that in your brief, but boy, when I look there, in two seconds, two other officers there, in five or six seconds, there's four or five other officers there. And the people you keep talking about sitting there, they walk by at the end, patting the officers on the back with the officers' backs all to them. Isn't that the ultimate red herring? I don't think so, Your Honor. I don't think so, because particularly in the bookend area, when you have a number of individuals who are not restrained, the bookend area, you have people coming in off the street. But, Counsel, Counsel, they sit there disinterested. Your time's almost gone. I won't take the rest of your time. Thank you. You've got, I read your. 30 seconds. Yeah. Very well. You may reserve it. Mr. Sprinkle. I think you may be mooted, Mr. You need to unmute your mic. I apologize. May it please the court. The notion that law enforcement officers are entitled under law to the gratuitous use of force is the underpinning of headline-grabbing instances of police violence. Although careful use of force is permitted under certain circumstances, the unnecessary use of force is contrary to the law, and that is in the Pulaski County's own manual. It states that the unnecessary use of force is contrary to the law. This case is about the unnecessary use of force that was violent enough to knock a man unconscious, lacerate his liver, and put a gash above his eye that the only reason he was even taken to the hospital is that they could not close. And it's easy to talk about these cases by a mashup of cases and legal speak and kind of make it a little ambiguous, but what the court really is saying is that an officer needs to understand what he can and cannot do in a particular scenario. In the Hughes case, for example, which was cited by the appellant, it describes an officer who faced a person who would not put a knife down after being asked to put a knife down several times, was within a few feet of another person, and whether an officer should have known that shooting that person, nonlethal shots, but whether shooting that person to prevent them from potentially stabbing somebody else will violate the constitutional right. In the City of Rapid City Corporation case, there was someone who was leaving, who was walking, well actually this is where someone was walking out of a jail cell, and they had a mattress in front of them that could be used as a shield. And so there was a question about whether an officer could handcuff that person in a somewhat violent way, I suppose, because the person was possibly using a mattress as a shield. And even in the Blasick case, the issue was someone who was not allowing the officers to do what they needed to do. And in that case, in all of those cases, the use of force was substantially less than it was in this case. The thing about this case is that in this case, Mr. McIntosh was proceeding toward the direction officers told him to proceed. He was kind of cantankerous, I suppose. There was something in the record about him being under the influence, and he was arrested for disorderly conduct, which is a misdemeanor. However, the officers had already arrested him. He was already under a use of force because he was in the custody of the officers. He was in a detention facility where there were several other officers. One other officer was behind him, assisting Deputy Hodge. They had already made him take a shower. He had already come out of the shower. He had walked all the way down the hall and was literally within feet of the place they were telling him to go. Not only was he within feet of the place they were telling him to go, but he was walking toward where they were telling him to go. What he was doing is he didn't want the officers to touch him, which I suppose is not good. However, not wanting the officers to touch him is not an amount of resistance, if it can be perceived as resistance at all when he's otherwise complying, that would justify that use of force. The Carroll's case is about the use of force. The Carroll's case is fairly on point. It's about the use of force if an officer perceives some amount of resistance, not a lot of resistance. I want to ask you about the Carroll's case. I went back and I looked at the record and looked at what you argued before. You're absolutely right. The district court raised the Carroll's case. I think I was on the panel for that case. Here, the plaintiff has a burden of showing that the law is clearly established. Even if we assume there are genuine issues of material fact, we can construe all the facts in your client's favor and you still have to show there'd be a clearly established law violation. My understanding is you didn't cite the Carroll's case. The district court did the work for you. I don't know if this is true or not, but I get the sense you don't really cite the Carroll's case for establishing clearly established law even on appeal. And I just want to give you a chance to argue that because ultimately the burden lies with the plaintiff here. Yes. So the Carroll's case does establish the law. I mean, the Carroll's case is one of the cases that establishes it. And the Carroll's case is about a suspect, I suppose, who is resisting just a little bit. And whether any amount of force is appropriate when someone is resisting a little bit. The Carroll's case does not permit or there's not even an argument that any amount of force, that unlimited force is usable. That is seen as clearly established. The Carroll's case is about is any amount of force reasonable? The reason that the Carroll's case fits this case to some degree is that the only argument is that there was minimal resistance. There's no argument that there was more than minimal resistance. And therefore, the Carroll's case is controlling because the Carroll's case says that if there's minimal resistance, then maybe some force is allowable. However, it specifically says that that does not mean that it opens the officer up to using unlimited force. And for that reason, the Carroll's case is controlling because in this case, the officer used pretty much the largest amount of force that he could possibly use. Did you raise these arguments, though, before the district court? My understanding is that the district court may have raised this sua sponte. But I want to I'm really getting at when this this the Carroll's case came up in the course of litigation. Yes. The Carroll's case, I believe, was raised by the district courts, by the district court. However, the cases, the other part of this is that the Carroll's case is partially on point. However, just the body of cases about excessive force establish what happened in this case. This case is a clear case in the Supreme Court has said, I believe, in in the Hughes, I believe it is. And Kelsey of the use that that in an obvious case, general statements of law give clear warning. And so the general body of cases that lead up to Carol's, the cases that Carol's rely on are enough warning in this case that for a subject that is not resisting that, that proposition is clear again. This is not about the specific fact pattern having appeared in a previous case. This is about an officer being put on notice. And the body of cases put officers on notice that if someone is not resisting, you can't use force against them. And if they are. I didn't interrupt you before, but I will hear that. I don't think Carol's uses the term minimal resisting at all. It keeps saying actively resisting. And I write about that. I just skimmed it. Carol's. I believe that Carol's is about a distinction between active resisting resistance, passive resistance and no resistance at all. And so the issue is that in the Carol's case, there was a question about whether there was any resistance, whether there was active resistance, passive resistance or any resistance at all. That question is present in this case. And the holding in the Carol's case was that that had to be decided by the court. The other primary issue in this case, though, is is the purpose of summary judgment. And it's the big issue that was raised by this court as the appellant was making their argument. And that is that the facts, as the appellant describes them, are not how it happened. The facts, the way that that in the light, most favorable of Mr. McIntosh, don't even get us to this point because they're they don't even make an argument. And they have the burden of the initial motion for summary judgment. They own the facts as they happen. They don't even make an argument that what he did was reasonable or that he didn't know that he should do. And in fact, there's evidence he didn't know that he should not have done it because he changed what happened in his initial report. He changed it again for the motion for summary judgment. He actually introduced facts for the motion for summary judgment that created a further controversy. He introduced an affidavit where he totally changed the story and said that he just slipped and he didn't body slam after he watched the video. And so in this case, the motion for summary judgment was presented on facts that that create a controversy which negate the motion for summary judgment. And so I believe that he actually did not even make an initial prima facie showing of entitlement because he raised significant questions of fact in his own motion. And for that reason, I ask that this court affirmed the judgment of the district court. Mr. Sprinkle, just a quick question. What was the date of this event? This event. Sorry. Was in 2014, I believe. Counsel, I thought it was in 2015, but you tell us for sure. OK, this is. I'm sure I can find it in the in the record. Is it April 18, 2015? That sounds right, Your Honor. That's that's from the other side of the breeze. So that's my clerk had to go. Go ahead, Judge. I mean, no. Thank you for the answer. Miss Depper, if you're still with us, we'll give you a minute in rebuttal. Thank you, Your Honor. I'm still here. I just want to note and the date is right. April 18, 2015. And I'm trying to Harold's case. Yeah, 15, 18. So my understanding reading Harold's, which is the date of this incident, is that it was not it was not the state of excessive force cases. The takedowns at the time this incident occurred. And your honors, therefore, I would rely back on the Blazek case that was it was a 2014 case. And in that case, this court determined that someone who was passively resistant and was taken down, that that was not clearly established, that such action would violate someone's constitutional rights. And that was the state of case law in the 8th Circuit on the day this incident occurred. Your honors. And your honors also want to address one more issue, and that is Mr. Sprinkle said that there are numerous disputed facts in this case. I hope I'm not putting words in his mouth, but your honor, the facts in this case are undisputed. There is the dispute of whether the elbow hit Deputy Hodge in the chest and said, for purposes of this argument, we will concede that. But even conceding that, I think that Blazek supports. It was not fairly established at the time that such a takedown would violate the Pele-McIntosh's rights. Very well. Thank you, counsel. We appreciate both of your arguments and appearance before us today. The case is submitted and will decided in due course.